The next case for argument is 22-1355, Pace v. BMW. Good morning. Whenever you're ready, Mr. Daly. Thank you, Your Honor. May it please the Court. I'd like to begin by discussing the dispute over the term burying, then address the turbocharger claims, and if time permits, the remaining issues on the pattern claims. What about recording? That is another pattern claim issue. I will address that if time permits, yes. There's no relevant factual dispute about how the severance key prior art reference works here. Everyone agrees that its history has two thresholds, an upper speed threshold, which is 30 to 35, and a lower speed threshold, which is 20 to 25. Everyone agrees these are different set points. Granted, Pace did dispute whether they were set points below, but we're not pursuing those arguments on appeal. And everyone agrees that they're factory set and fixed. BMW said at Appendix 51-97 that they're factory set, and BMW's expert, Dr. Davis, said that they can be separate variables with fixed values, and that was at Appendix 52-51. And so the key dispute concerning this term. So we're talking about burying, right? Yes. Your brief on several occasions, I believe, says that the board held that disregarding a set point constitutes burying. And I'm not sure I agree that that's a fair characterization of what the board said. So it seems like when the board mentioned disregarding a set point, it was citing your characterization and not its characterization of this. So, one, am I right about that, or can you point me to something where the board really came to that conclusion, not merely citing what you said? And why, if you can't, why that doesn't become this leading statement in your brief? Well, I think what you say is fair to the extent that certainly the board was referring to our argument when they used the word disregarding. Okay. So how do I make the leap to support your characterization of the board's health that disregarding a set point constitutes burying? Well, the board did not contest our characterization. What they did, what they said is here, the primary basis for patent owner's argument that disregarding I'm on appendix 20. I'm around the middle of the page. And what the board says is the primary basis for Pace's argument that disregarding the set point does not correspond to burying is that Severinsky's set points would not change through the lifetime of the vehicle. And then they go on to say, however, instead we agree with petitioner BMW the challenge claims are agnostic on this set point. So what I understand the board to be saying So that's a holding by the board? What I understand the board to be saying there is we don't need to decide any factual issue about whether the values are changing because the challenge claims are agnostic about whether it's changed or disregarded. I think certainly, you know, I don't think there's a clear statement where the board says, you know, we hold that disregarding constitutes burying. And I apologize if our brief gave that impression. Well, your brief didn't give that impression. Your brief said that. What we meant to say is that the board's reasoning hinged on the assumption that a change in the set point is not required by the term burying. Now, the way we understood that below was disregarding. I think the way BMW characterizes it on appeal is instead they say at page 25 of the red brief that providing for two different set points or multiple set points constitutes burying. I think, you know, the characterizations have shifted a bit in part because the parties' positions have just crystallized further as the case has matured. And really that, I think, now is the key dispute before the court, which is, is BMW correct that the term burying encovers providing for two fixed, unchanging set points? Or is Pace correct that the ordinary meaning of burying, which is changing, applies? I think it's really important to note here that the plain meaning is not actually in dispute. In our blue brief, it's argued at length about the plain meaning. And in the red brief, BMW does not argue for a different plain meaning. Instead, their substantive argument on this point is that there are examples in the specification of the term burying being used, which they say compels broader understanding. That's simply not an accurate characterization of the specification. All four of the embodiments that they point to involve at least the ability to change the value of one of those set points. I think the third one in particular is the one that the board cited in support of its interpretation of the claims. That is an embodiment that also involves hysteresis, just similar in some ways to the hysteresis of the prior Severinsky reference. But what that embodiment says is not only do you have these two fixed set points, but those set points have the ability to change. And that's the feature that is claimed in Claims 2 and 24 of 347 patent when they use the word burying set set point. And these points appear to be factually based. So you're staring at substantial evidence in the face. What's your argument as to the evidence that supports your position? I would disagree with you about them being factually based, Your Honor. What's the legal issue then that you're arguing? The legal issue is what is the scope of these claims? Are they broad enough to include providing for more than one set point even if those set points don't change? Or are the claims narrower than that and limited to scenarios where the values of those set points can actually change? And I think the thermostat analogy that we've used in our brief is helpful to understand that because you could have a thermostat. It wouldn't be a very useful one, I think, that has this hysteresis where there's an upper threshold and a lower threshold, so it's not constantly going off and on, but you couldn't change the temperature. Or you could have a thermostat that works like most thermostats where you can actually change the temperature, and by changing it, you're also altering the upper and lower bounds. And you present an expert testimony in this regard? I don't know if our expert provided this exact analogy. Dr. Davis? Dr. Davis didn't dispute this. This is what he said instead. Let me direct you to 5251. And he says that the argument that we made about these thresholds never changing misses the point because the claims do not require that you have to change a variable in the source code or any other particular way of varying. And so implicit in his argument here is about what the claims require or what the claims do not require. So he's really offering an opinion on the interpretation or construction of the claim rather than an opinion about the scope or the content of the claim. He's offering a factual opinion or a legal opinion? I would say it's a legal opinion because he's not saying Dr. Davis is BMW's expert. I would say he's offering a legal opinion here because he's not saying, for instance, that this is the ordinary meaning that a person of skill in the field would use or vary in this way. He's sort of directly testifying about what he thinks the claims require, which, of course, as the court knows, the ultimate decision on claims Do you have authority that we can accept an expert opinion as a legal opinion? I think actually you should not accept it, and I think that's really the board's error in this case is that they credited Dr. Davis's legal opinion on the scope of the claims instead of looking at the intrinsic evidence and reaching the conclusion that varying has its plain and ordinary meaning here, which all agree is not satisfied in the prior art. Counsel, can you point me to where varying was raised just as a claim construction dispute so I can make sure I'm on the same page? So I think it's a little challenging because, again, this is an issue that sort of crystallized more as the case went on, but I would take you first of all back to the petition, which is where this all started. And that's where BMW raised this theory that their theory was, and I'll point to appendix 416. They don't really explain what they understand varying to mean. What they say instead is simply that use of speed response or hysteresis requires varying set point accordingly. And so Pace was at a bit of a disadvantage here, not really understanding what the theory was in the petition. In our patent owner response, we came back, and we applied what we understand the ordinary meaning to be, and that is at appendix 4542. And at the top of the page, we say, there is nothing in Severinsky that discloses or suggests that either of these speed thresholds are changed. Now certainly we're not asking for a claim construction in that sentence, but implicit in our argument is that we understood the term varying to have its ordinary meaning. And it's really when BMW came back with their reply brief, and they attached this second declaration of Dr. Davis, where he kind of opines about what the claims allegedly do not require, that introduced, I think, a claim construction dispute or sort of a latent claim construction dispute into the case. Would you agree that there's a difference between disputing whether prior art discloses a term and actually disputing how a term should be construed? I think there's certainly a distinction there, yes, Your Honor. And the important way to understand that distinction is, are you looking at what the prior art teaches? Is there an argument, a factual underlying factual argument, about what the prior art teaches? Or is the argument really about the scope of the claims and what the claims require? And I think it wasn't really apparent in this case, to pace until the final written decision, that the real crux of the dispute here was about what the claims require or don't require. Did you put across or did you offer any claim construction on very end and according? No, no formal claim construction was proposed. It's been paced disposition from the beginning that this term has its ordinary meaning and that that ordinary meaning is changing. Just since Judge Rayner mentioned accordingly, going back to the first point I raised with you earlier, now on the accordingly point, you also say that the board mischaracterized your argument as requiring that very intercept point accordingly be done in real time. Yes, Your Honor. But wasn't the board, in fact, just quoting your argument where you bolded and italicized the words real time? Well, we made two points in a single argument and maybe the board was confused by that. Well, how did the board mischaracterize your argument when it was using your own words for what you had said? How was that a mischaracterization by the board? They mischaracterized our argument because they equated this real-time concept with word accordingly when the real-time concept was really being argued as part of a varying argument. And if you return to what we say in our certify that the board is quoting, which is... Is that 5948? 5948. The board was quoting what you said. And the word accordingly indicates that the controller must vary the set point based on vehicle monitoring over time. Right, so that, Your Honor, is what we set forth, what we understand. And then you go on. The quote goes on. And I don't need to read all of it, but it talks about in real time much less based on the observed vehicle operation. Right, and it's the much less based on observed vehicle operation portion of that sentence. That last clause is where we tie back to the previous sentence where we articulate what we understand accordingly. I know, but, again, I'm just, you know, just maybe what's proper to do. It just offends me or bothers me that you accuse the board of mischaracterizing your argument or I don't see where they mischaracterized your argument. Now, you could have said they misunderstood because even though we said this, we really meant that. But I think in fairness to the board, they were quoting exactly what you said. Well, respectfully, Your Honor, I disagree with that. I do think it's a mischaracterization. And perhaps misunderstanding is a more charitable interpretation of it. But we were trying to make two interrelated points. First, that there's no varying at all. And second, if there's no varying at all, there's certainly also no varying accordingly because there's further a requirement that the varying be done in a particular way just based on vehicle monitoring over time. And I think the board's statement conflated those two points. Perhaps it was a mistake. If I can just very briefly address the charged with charger claims, I think the important thing to know here is that the only non-redundant reason to combine the references that the board identified was to preserve battery charge. And the only evidence that cited for that was two paragraphs from Dr. Davis' initial and reply declaration, which essentially just assert that doing so would have been obvious in an ipsodixit fashion. And we think that this is a direct application of the TQ Delta case. If you compare the conclusory nature of his opinions on this subject to TQ Delta's conclusory testimony, it's the same level of generality. Just as in TQ Delta, the rationale is not supported by citation to any reference that teaches this motivation, just as in TQ Delta it appears to have been taken just directly from the specification of the challenged patents. And finally, the board really compounded its error in relying on this testimony by entirely ignoring the evidence Pace put forth over 4 1⁄2 pages of its patent on the response about the disadvantages of adding a turbocharger to Severinsky, which under this Court's cases in Winner and Henny Penny needed to at least be considered as part of the analysis. Well, while we have time, why don't we save some time for the budget? Good morning, Your Honors. May it please the Court? Vincent Galuzzo on behalf of BMW. Even though Pace did not preserve the claim construction arguments it raises now on appeal, those arguments have no bearing on this case. And that's because prior art Severinsky varies or changes a set point value during its hysteresis mode from its traditional 60% MTO set point to a lower value, not a different set point, but a lower value MTO corresponding to 20 to 25 miles an hour of speed during normal highway driving. Likewise for accordingly, the combination of Severinsky and knee varies that set point accordingly, in accordance with, based on knees pattern monitoring. In other words... I just want to understand. Are you saying that you would win under either construction, either the construction that he seems to be implying or your construction? I'm just trying to make sure I'm tracking what you're saying right now. You're absolutely right, Your Honor. Under the constructions that they are now proposing, BMW would still win. And that's because the scope of the prior art Severinsky in terms of the varying issue and the combination of Severinsky and knee in terms of the accordingly issue that they're raising in addition to the motivation to combine arguments, which are quite a bit different. But all of that would still find, under the board's own reasoning and conclusions, based on the expert testimony and the battle of the experts, as Judge Reina has referred to before, that Severinsky discloses varying as a change of the set point value. And Severinsky and knee teach in combination of varying in accordance with the pattern monitoring. So, Judge Cunningham, you're exactly right. And that's why I say this. Well, can I just ask for a process point? The other side says in its brief that you accused as you of not relying on knee for the accordingly piece of the claims. Is that correct statement? That is an incorrect statement, Your Honor. And I'll point you to throughout the proceedings below where we relied on that exact point. First, in the petition, at Appendix 442. And I won't quote it in all, but I will... Based on the pattern information disclosed by knee, I see it. Exactly, Your Honor. Thank you. Next was in Petitioner's Declaration by Dr. Davis. This is Appendix 868 and 869. Specifically, Dr. Davis's paragraph 610, where he states a skilled artisan would have applied the teachings discussed above from knee, and those are the ones about monitoring, to vary the set point discussed in Severinsky. So on what basis did they conclude that you failed to preserve that argument?  Thank you, Your Honor. Back to Judge Cunningham's point, that's why I... Or question, that's why I said that the claim construction issues have no bearing on this case. We can argue as a theoretical matter whether they were preserved or whether this court should exercise its discretion to review forfeited arguments, but to cut to the point, they simply don't matter. Because the prior art satisfies Pace's new claim constructions, the result should be to affirm the Board's decision. The Board's decision should also be affirmed, or decisions should also be affirmed, because substantial evidence from the prior art, from Dr. Davis's testimony, from testimony, some of which from their own expert, and from contemporaneous and supporting evidence, not just conclusory expert testimony, supports a motivation to combine on both the pattern claims and on the turbocharger claims. Now, I'd like to address an argument that my friend made at the very beginning of his argument, stating that there is no factual dispute in this matter about what Severinsky discloses. I don't think that's true. Severinsky, as we've presented it, as Dr. Davis has opined, and as the Board found, varies a set point by pointing to different values during the hysteresis mode. In normal operation, Severinsky is changing from an all-motor operation at low road loads to an all-engine operation at what I'll call moderate road loads at a 60% maximum torque output of the engine set point. But in order to get rid of nuisance stopping and starting, as your normal suburban driving might go above and below that set point quite often, Severinsky makes the decision for a limited period of time to lower that set point value to a different value, to lower the set point to a different value, a torque value that approximates 20 to 25 miles an hour in normal highway driving. Now, my friend didn't raise this argument here, but in the briefing and below, they say that that is a disregarding of the set point, but that's not true. We know it is not a disregarding of the set point because disregarding would require running the engine regardless of what the road load needed is. Even if you come to a full and complete stop of the vehicle, the engine would still be running if you are disregarding the set point. But what we know from Dr. Davis's opinion about Severinsky, one of skill in the art, would read Severinsky and know because of the way it characterizes its hysteresis mode, the engine, in fact, is turned off if you get to that set point below 20 miles an hour. So you essentially have a situation where the set point isn't just disregarding. Does that set point reset itself back to the original set point or does it depend on a different MOT to do that? According to Dr. Davis's read of Severinsky and what someone with skill in the art would understand, Judge Reyna, that's exactly right, after the 2 to 3 minutes at the 20 to 25 miles an hour, the set point would be reset such that the normal engine operation, the normal control strategy for the hybrid vehicle would resume. And the reason we know that is because Severinsky tells us we're trying to deal with two competing interests here. One is we want to increase fuel economy and decrease pollutants, but at the same time, as any vehicle, we have to respond to the driver's demand. We can't shut the engine off if they need to climb a hill. So with these two competing interests, we are allowing us to go out of the most efficient operating range of the engine in this hysteresis mode, but for a limited amount of time to account for driver demands and needs, such as a nuisance. That brings me to the thermostat point that my friend made. Now, I think the better analogy to a thermostat for what Severinsky does is everyone who's been in a hotel knows that the thermostat and the A.C. can click on and off quite a bit. Mine last night, in fact, was doing that. And the way that you solve that nuisance stopping and starting of the air conditioning is you might decide, I'm okay with my room being a little colder for a few minutes, so I'm going to go and I'm going to change the thermostat value down 5 degrees for 2 to 3 minutes such that the A.C. will continue to run for those 2 to 3 minutes, even though it's colder than I would normally like. And after those... It's a good idea. Maybe I'll try it. Well, Severinsky teaches it, Your Honor, so we can learn from that. And so that is what Severinsky is doing. It's not a hysteresis of blending values on transients. It is resetting the set point to a lower value so that the engine will continue to run. On the turbocharger motivation, unless Your Honors would like more on that point, motivation and combined arguments, this is not a situation like in TQ-Delta. TQ-Delta involved a case where the expert relied on 2 sentences from the prior reference and gave 2 paragraphs of opinion based on that without any support whatsoever other than his own say-so. That's not this case. Dr. Davis gave sufficient background testimony that while maybe not cited in the board's analysis, was recognized by the board in its summary of the argument. Why don't you start with what the board did? Because I thought I was a little confused about the board's reasoning. So maybe you can start with what the board's reasoning was and then talk about some of the support for that. Absolutely, Your Honor. After summarizing the party's arguments from Appendix 30 to 36, the board started its analysis and found first that Ma explicitly discloses the use of a motor, an engine, and a turbocharger in conjunction. That's at Appendix 37 to 38. The board next found that Ma and Severinsky both relate to parallel hybrids. They have interrelated teachings. That's Appendix 38. That Ma and Severinsky both tried to solve for supplemental torque. Ma doing it with an engine, a motor, and a turbocharger, whereas Severinsky does it just with an engine and a motor. That's at Appendix 38 to 39. The board then analyzed Dr. Shabachty, that's Pace's expert's testimony, and found for a number of very good reasons supported by the record that his testimony should be entitled to little weight. That's at Appendix 39. The board then went on in Appendix 39 to 40 to reject the bodily incorporation arguments that Pace had made, essentially that because Ma's engine was suspected to be, I'm sorry, motor was suspected to be a supplemental engine as opposed to a full-size engine, that it wouldn't work in Severinsky. Those arguments were rejected, Appendix 39 to 40. And to get now, I think, to Judge Crouse, what your question was, starting at Appendix 40, the board found that the benefits from Ma would not be redundant. The benefits of adding a turbocharger from Ma would not be redundant of the benefits that you could gain from further optimizing the electric motor. And based on that, I think, wrapped up in that, inextricable from that, is that Dr. Shabachty's testimony otherwise, that you could just make motor gain benefits, was entitled to little weight. That's at Appendix 40 to 49. But Pace takes issue with that and says it was conclusory, that the reliance on the expert testimony, the expert testimony was conclusory. I don't think they take issue with Dr. Shabachty's testimony being given little weight. The issue they take, at least as far as I read their briefing, is that Dr. Davis' testimony was conclusory. Yes. Thank you, Your Honor. So Dr. Davis' testimony is not conclusory because it's based on a number of contemporaneous and supporting references. The one that came up in this court is the Stone reference. And he references this at Appendix 5287 to 88 in his paragraph 93, discussing how this reference talks about the benefits of turbochargers in hybrid electric... or benefits of turbochargers in hybrid electric vehicles. But all of this opinion also comes with an extensive background at Appendix 693 to 702 and Appendix 5276 to 5286, where Dr. Davis goes through chapter and verse of a number of different contemporaneous supporting documents discussing the benefits of turbochargers in general, the benefits of turbochargers in hybrid electric vehicles. Now, to take a step back and put it in context, a turbocharger is a booster. It boosts engine output for the same amount of fuel. And because Pace didn't invent using a turbocharger in hybrid vehicles on demand, like Ma discloses this, we know that there is reason from Ma itself to add a turbocharger to a... or to use a turbocharger with an engine and a motor at high loads for supplementary torque. The reason, in addition to what Dr. Davis said, and to summarize one of the points he made, is that adding a turbocharger is beneficial for the same reason it's beneficial to add a turbocharger to any engine, hybrid or not. Turbochargers increase maximum torque output, they allow for smaller engine size, and they reduce fuel consumption. And those are not... those are not redundant benefits of the motor, and the reason being that in Severinsky, since that's our base reference, since Severinsky's vehicle control strategy, you have to run the engine at least at some times. And you run the engine at high loads in conjunction with the motor for that acceleration mode, as they call it. Well, you can optimize the motor as much as you want, but you still have to run the engine, so optimization gains of the engine are also beneficial. And when you are running the engine, then those gains are not redundant of motor gain deficiencies. Is a turbocharged engine just by definition running at a higher torque than a non-turbocharged engine? So there's two... I'll call it two different types of turbocharged engines. There's turbocharged engines where the turbocharger is running at all times, and then there are turbocharged engines such as... that are in the MAW reference, and as we propose in our combination, that are run only at high loads. They are run selectively and only at a sustained high power or high... I think MAW calls it high performance needs. And so there are differences in the way the turbochargers are operated. But when they are operated, they do increase the torque output of the engine for the same amount of fuel because the turbocharger's torque burst, if you call it, or torque increase, is not gasoline or fuel-based. Your Honours, I believe I've touched almost all of the issues. I'm happy to concede the rest of my time, or if Your Honours would like... You're almost out of time. Good try, though. The one point I'll just make in my final few seconds, Your Honours, is there was a point raised in the yellow brief about a quest for remand. I mean, it's clear that should this court make any decision other than to affirm, there are a number of alternative grounds that require remand. So I just wanted to make that clear for the record. You mean gray in that yellow, right? I'm sorry, yes. Thank you, Your Honour. Gray brief. My apologies, this is not a cross-appeal. Thank you. Thank you, Your Honours. We're out of time, but will we start ten minutes of rebuttal? Mr. Dyer. Thank you, Your Honours. I'll just briefly respond to a few points. First of all, on the varying issue, I think that the argument we just heard from my friend on the other side is really quite contradictory to what BMW's own expert said about the Severinsky prior reference. On Appendix 5251 in particular, he characterized the different values as separate variables or fixed values. So his opinion that he offered was not that you have one variable or value that's changing depending on this history, it's that you have separate variables. And that's why the dispute really turns on claim construction. On the turbocharger claims, Your Honour, I think we heard a lot about the alleged benefits of adding torque to Severinsky, but the board never made a finding that adding torque would not be redundant. I think the comparison of adding a turbocharger to Severinsky and MAH is really a specious one. MAH has a very small lean burn engine, which it says lacks power, and that's why they add the turbocharger. In contrast, Severinsky has a very large motor in addition to its engine, and there's never been any suggestion that the amount of torque it generates is deficient in any way. So it can't be correct that a skilled artisan is motivated to just continually add more and more torque to the engine ad nauseum, not serving or addressing any underlying problem. Finally, on the accordingly issue, we heard a lot about NYE. I just wanted to give the court citations, which is, you know, appendix 4549 to 4550, which is where we in our panel in response said they weren't relying on NYE. Their reply was 5202, 5206, silent on that issue, and then the board found they were not relying on NYE at appendix 42. Do you disagree with the... In their brief, in the red brief, they point to several passages where they do just that, they rely on NYE. So... They certainly rely on NYE for a motivation to combine, and that was the citation that my friend provided here was to the motivation to combine section of their petition. But if you go back earlier in the petition to where they lay out why they think the varying accordingly limitation is met, it's again, it's just this... Appendix 416, it's just this sentence that says, use of the speed response of hysteresis, and that's referring to Severinsky, not to NYE, requires varying said set point. What about 442? This is their petition. Yes, 442 is a later section of their petition which addresses motivation to combine, and they say... I think they say that... So certainly they rely on NYE as a reference in this combination. They rely on it, though, for the use of... Well, they said it would have understood... CEDA would have understood that the arbitrary parameters for varying the engine set point can be improved based on the pattern information disclosed by NYE. So they were relying... Isn't that reliance on NYE for disclosure? What I would read that as is relying on NYE for the disclosure of monitoring for pattern information. I don't read that as changing what they said earlier where they relied on Severinsky for varying accordingly. Thank you. Thank both sides. The case is submitted. That concludes our proceedings this morning.